**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DONELL GEROD BRYANT, | ) |
| Plaintiff, | ) Case No.: 2:16-cv-01172-GMN-PAL |
| vs. | ) |
| | ) **ORDER** |
| OFFICER DONOHUE, *et al.*, | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Summary Judgment filed by Defendants Officer Donohue, Officer Jenson, and Officer Newbold (collectively "Defendants"). (ECF No. 31). Plaintiff Donell Gerod Bryant ("Plaintiff")[1] filed a Response, (ECF No. 33), and Defendants filed a Reply, (ECF No. 34). For the reasons discussed herein, Defendants' Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

This case arises from two separate incidents that occurred while Plaintiff was a pretrial detainee at Clark County Detention Center ("CCDC"). (Compl., ECF No. 3). The first incident occurred on February 17, 2016, when Officer Jensen and Officer Newbold allegedly engaged in an excessive strip search of Plaintiff while checking for drugs. (*See id.* at 5). The second incident occurred on March 24, 2016, when Officer Donohue allegedly used excessive force against Plaintiff while directing Plaintiff to return to his prison cell. (*See id.* at 6).

*A.    Excessive Strip Search Incident*

On February 17, 2016, Sergeant Siciliano assigned Officer Jensen to conduct strip searches of inmates housed in Unit 7B at CCDC. (Aff. Jensen ¶ 4, Ex. A to Defs.' MSJ Errata,

---

[1] In light of Plaintiff's status as a *pro se* litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

ECF No. 36-1). The purpose of these searches was to identify inmates in possession of methamphetamines and other drug paraphernalia. (*Id.*). In accordance with this goal, Officer Jensen escorted Plaintiff into a strip search room. (*Id.* ¶ 5). According to Officer Jensen, Plaintiff appeared "extremely nervous" and "had his left hand clinched." (*Id.* ¶ 6). Officer Jensen directed Plaintiff to remove his clothing and raise his hands. (*Id.* ¶¶ 8, 9). Before Plaintiff raised his hands, however, Officer Jensen claims to have seen Plaintiff place his left hand near his buttocks, at which point Officer Newbold came over to assist with the search. (*Id.* ¶¶ 15, 16).

Having purportedly witnessed Plaintiff "reaching for an unknown object," Officer Newbold turned Plaintiff towards the wall, spread his feet, and placed him in handcuffs. (Aff. Newbold ¶ 9, Ex. C to Defs.' MSJ Errata, ECF No. 36-2). Officer Newbold then claims to have seen "what appeared to be cellophane sticking out of [Plaintiff's] buttocks." (*Id.* ¶ 10). Officer Newbold states that he asked Plaintiff to remove the substance, but Plaintiff refused. (*Id.* ¶ 11). According to Officer Newbold, he informed Plaintiff that failure to comply would result in the officers obtaining a warrant and having a doctor remove the substance. (*Id.* ¶¶ 12, 13). At this point, Officer Newbold claims that Plaintiff willingly removed the substance, which CCDC later confirmed to be methamphetamine. (*Id.* ¶¶ 13, 15).

Plaintiff does not dispute having methamphetamine on him during the search. (Pl.'s Dep. at 30, Ex. B to Def.'s MSJ, ECF No. 31-2). According to Plaintiff, however, he did not voluntarily remove the substance. (*Id.*); (Compl. at 4). Rather, Plaintiff alleges that Defendant Newbold forcefully removed the substance by "stick[ing] his hand up [Plaintiff's] rectum," which caused severe pain and bleeding. (*Id.*); (*See* Aff. Pl., Ex. A to Pl.'s Resp., ECF No. 33-1). Plaintiff asserts that Officer Newbold violated CCDC policy by utilizing a cavity search instead of a strip search under these circumstances. (*See* Pl.'s Dep. at 30, Ex. B to Def.'s MSJ).

B. *Excessive Force Incident*

On March 24, 2016, Officer Donohue and a nurse were conducting a medication pass in Plaintiff's housing unit. (Aff. Donohue ¶ 3, Ex. D to Defs.' MSJ Errata, ECF No. 36-3). As part of the inspection, Officer Donohue requested that Plaintiff open his mouth to show that he swallowed his medicine. (*Id.* ¶ 5). According to Officer Donohue, Plaintiff initially complied but turned away before he could complete the inspection. (*Id.* ¶ 6). After subsequent requests for Plaintiff to comply, Officer Donohue claims that Plaintiff became agitated. (*Id.* ¶¶ 7–10). Due to Plaintiff's alleged disobedience, Officer Donohue states that he ordered Plaintiff to return to his cell. (*Id.* ¶ 11).

As Plaintiff began moving towards his cell, the two continued to engage in a verbal confrontation. (*Id.* ¶¶ 12–14). Once back at Plaintiff's cell, Officer Donohue asserts that Plaintiff refused to back up far enough for him to safely shut the cell door. (*Id.* ¶ 18). In order to create distance, Officer Donohue claims that he pushed Plaintiff's shoulder, thus causing Plaintiff to step backwards into his cell. (*Id.* ¶ 18, 19). Plaintiff, in turn, alleges that Officer Donohue entered Plaintiff's cell and rammed his head against the wall, causing both pain and swelling. (Aff. Pl., Ex. A to Pl.'s Resp.). As a result of this incident, Plaintiff alleges that a nurse treated him with pain medication and an ice pack. (Pl.'s Dep. at 56, 62, Ex. B to Def.'s MSJ). CCDC conducted an investigation of the incident and determined Plaintiff's allegations to lack merit. (Investigation Report, Ex. F to Def.'s MSJ, ECF No. 31-6).

C. *Procedural History*

Plaintiff initiated this action in federal court on May 24, 2016, by filing an Application to Proceed *In Forma Pauperis*. (IFP, ECF No. 1). On January 6, 2017, the Court issued its Screening Order, which permitted Plaintiff's case to move forward on two claims under 42 U.S.C. § 1983: (1) excessive strip search in violation of the Fourth Amendment against Officer Jensen and Officer Newbold; and (2) excessive use of force in violation of the Fourteenth

Amendment against Officer Donohue. (Screening Order, ECF No. 2).  On February 22, 2018, Defendants filed the instant Motion for Summary Judgment. (ECF No. 31).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case

on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

### A. Section 1983 Claims

#### 1. Fourth Amendment Claim Against Officer Jensen and Officer Newbold

Defendants advance three arguments in favor of summary judgment on Plaintiff's Fourth Amendment claim: (1) Plaintiff's claim is barred by *Heck v. Humphrey*; (2) the search was not

excessive; and (3) Defendants are entitled to qualified immunity. (*See* Def.'s MSJ 7:22–9:24, ECF No. 31). The Court addresses these arguments in turn.

  *A.  Heck v. Humphrey*

  Pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), a § 1983 action that challenges the validity of a plaintiff's criminal conviction or confinement is not cognizable unless the plaintiff can prove that his or her sentence has been reversed, expunged, declared invalid, or called into question by the issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486–87. "*Heck*, in other words, says that if a criminal conviction stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). Conversely, if success on the merits would not necessarily demonstrate the invalidity of the conviction or confinement, the action may proceed. *Heck*, 512 U.S. at 487.

  Defendants argue that Plaintiff's Fourth Amendment claim is barred because he pled guilty to "trafficking charges he received as a result of the drugs found during his strip search" and "did not appeal any underlying decisions." (Def.'s MSJ 8:25–26). As noted in *Heck*, however, a suit for damages attributable to an allegedly unreasonable search may lie "even if the challenged search produced evidence that was introduced in a criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Heck*, 512 U.S. at 487 n.7 (noting that doctrines like independent source, inevitable discovery, and harmless error provide that a successful § 1983 action "would not *necessarily* imply that the plaintiff's conviction was unlawful."); *see also Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir.1995).

  Here, Plaintiff does not challenge possessing drugs at the time of the search. (*See* Pl.'s Dep. at 30, Ex. B to Def.'s MSJ). Rather, Plaintiff challenges the allegedly unreasonable manner in which Defendants conducted the search. Plaintiff's success in this action would

therefore not necessarily invalidate his conviction for drug trafficking. Accordingly, the Court finds that *Heck v. Humphrey* does not bar his claim.

  B.  *Excessive Search*

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections extend to incarcerated prisoners. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). In determining the reasonableness of a search under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. The reasonableness of a prisoner search is determined by reference to the prison context. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir.1988); *Bull v. City of San Francisco, et al.*, 595 F.3d 964, 974–75 (9th Cir. 2010) (en banc). In order to give rise to a constitutional violation, a plaintiff must demonstrate that the search was "excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Turner v. Safley,* 482 U.S. 78, 79 (1987).

Here, the reasonableness of the search turns on the scope and manner of the intrusion. *See Bell*, 441 U.S. at 545. Defendants argue that the search was not excessive because "[t]here is no evidence that either Officer Newbold or Jensen made an invasive search of Plaintiff's rectum . . . ." (Def.'s MSJ 9:5–7); *see Rickman v. Avaniti*, 854 F.2d 327, 328 (9th Cir. 1988) (finding routine visual body cavity searches of inmates to be constitutional). The Court does not agree with this characterization of the evidence. To the contrary, Plaintiff has explicitly asserted in both his sworn affidavit and deposition testimony that Defendants conducted a physical cavity search during the subject incident. While both Officer Jensen and Officer Newbold challenge this assertion, the function of the Court on summary judgment is not to weigh the evidence for its truth. *See Anderson*, 477 U.S. at 249. Drawing all justifiable inferences in favor of Plaintiff, the Court finds that a reasonable jury could conclude Defendants engaged in a physical cavity search.

Assuming, *arguendo*, that the cavity search was physical, courts consider a number of factors in determining whether the search was reasonable. These factors include "hygiene, medical training, emotional and physical trauma, and the availability of alternative methods for conducting the search." *Felder v. Henson*, 2016 WL 8731116, at *3 (E.D. Cal. Mar. 11, 2016) (citing *Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir. 1988), *abrogated on other grounds by Graham v. Connor*, 490 U.S. 386 (1989)); *Thompson v. Souza*, 111 F.3d 694, 700-01 (9th Cir. 1997) (considering hygiene and medical training of officers in evaluating the reasonableness of the search). Defendants fail to address these factors in their Motion, or else provide any evidence as to the reasonableness of a physical cavity search. Accordingly, the Court finds that Defendants have not met their burden on summary judgment.

C.   *Qualified Immunity*

Qualified immunity is available to government officials if they could reasonably have thought that their actions were lawful in light of the clearly established law and the information they possessed. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). The appellants "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that" the action was lawful. *Malley v. Briggs,* 475 U.S. 335, 341 (1986). At the time of the incident, it was clearly established that the Fourth Amendment requires that rectal searches in prisons be conducted with reasonable cause and in a reasonable manner. *Bell*, 441 U.S. at 520 (1979).

Defendants argue that they are entitled to qualified immunity because they "fully complied with the law in conducting their search . . . ." (*See* Def.'s MSJ 19:3–4). To support this conclusion, Defendants rely on their assertion that Plaintiff voluntarily removed the methamphetamines from his buttocks. (*Id.* 18:11–12). As stated above, however, a legitimate factual dispute exists as to whether Defendants physically removed the drugs from Plaintiff's rectum. The potentially invasive nature of the search—as well as the specific manner in which

the search was conducted—necessarily affects whether an objectively competent officer would have known the search was reasonable under the Fourth Amendment. *See Bell*, 441 U.S. at 559. Given the disputed facts in the record, the Court finds that Defendants are not entitled to qualified immunity at this time.

### 2. **Fourteenth Amendment Claim Against Officer Donohue**

Defendants argue that the Court should grant summary judgment on Plaintiff's Fourteenth Amendment claim because Officer Donohue used reasonable force under the circumstances. (*See* Def.'s MSJ 13:18–25). To establish an excessive force claim under the Fourteenth Amendment, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.' " *Id.* (quoting *Graham v. Connor*, 109 S. Ct. 1865, 1872 (1989)).

In evaluating objective reasonableness, the Supreme Court detailed multiple non-exclusive factors to consider: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting." *Id.* Because this "balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).

In their Motion, Defendants argue that Officer Donohue's use of force was necessary to ensure compliance and resolve any security threats. (*See* Def.'s MSJ 9:25–13:24). In making this argument, Defendants rely almost exclusively on Officer Donohue's statements regarding the incident. According to Officer Donohue, he pushed Plaintiff on the shoulder to create

distance and shut Plaintiff's cell door. (Aff. Donohue ¶¶ 12–19, Ex. D to Defs.' MSJ Errata). Plaintiff, however, states that Officer Donohue entered the cell after the door was nearly closed and then pushed Plaintiff's head against the wall. (Aff. Pl., Ex. A to Pl.'s Resp.). As stated above, the Court's function at summary judgment is not to weigh the evidence for its truth, but rather determine whether there exists a triable issue of material fact. *See Anderson*, 477 U.S. at 249. Aside from each party's respective statements, the record is largely devoid of evidence to support either party's version of the incident.[2] Thus, drawing all justifiable inferences in favor of Plaintiff, the Court finds that a reasonable jury could conclude that Officer Donohue's use of force after Plaintiff had already returned to his cell was objectively unreasonable.[3] The Court therefore finds that Defendants are not entitled to summary judgment on this claim.[4]

### B. Punitive Damages

In the Ninth Circuit, "[i]t is well-established that a 'jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.'" *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir.1993) (quoting *Davis v. Mason County*, 927 F.2d 1473, 1485 (9th Cir.1991)).

---

[2] Defendants reference a video that allegedly confirms Officer Donohue's version of the incident; however, Defendants have failed to provide any such video to the Court for review.

[3] Defendants additionally argue that Plaintiff's claim fails as a matter of law due to Plaintiff's *de minimis* injuries. (*See* Def.'s MSJ 12:3–13:2). While a pretrial detainee's injuries must be more than *de minimis* to support a constitutional violation, they need not be "serious" or "significant." *Hudson v. McMillian*, 503 U.S. 1, 8–10 (1992). Here, Plaintiff states that he suffered pain and swelling to his head, which required an ice pack and pain medication. (Pl.'s Dep. at 56, 62, Ex. B to Def.'s MSJ). Drawing reasonable inferences in favor of Plaintiff, the Court finds this alleged injury sufficient to survive summary judgment.

[4] The Court has additionally analyzed Defendants' qualified immunity argument and finds that it fails for the same reasons as noted above. The right of a pretrial detainee to be free from objectively unreasonable force under the Fourteenth Amendment was clearly established at the time of the incident. *See Kingsley*, 135 S. Ct. at 2473. Given the factual dispute over whether the security and compliance issues had resolved at the time Officer Donohue used force, as well as the specific nature of the force employed, the Court cannot determine at this time that an objectively competent officer would have concluded the force to be lawful.

Here, Defendants broadly assert that the Court should strike Plaintiff's claim for punitive damages because "there is no evidence any Defendants' conduct was driven by evil motive or intent, or involved a reckless or callous indifference to Plaintiff's rights." (*See* Def.'s MSJ 20:20–23). The Court disagrees. Given the disputed material facts in this case, a reasonable jury could conclude Defendants' actions were recklessly or callously indifferent to Plaintiff's rights under the Fourth and Fourteenth Amendments. The Court therefore denies Defendants' request to strike punitive damages.

### C. Claims Against Defendants in their Official Capacities

In the Complaint, Plaintiff raises his claims against Defendants both in their individual and official capacity. A suit against a government officer in his official capacity is "equivalent to a suit against the government entity itself." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). Pursuant to *Monell*, municipalities can be sued directly under § 1983 for violations of constitutional rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

To bring a claim for the deprivation of a constitutional right by a municipality, a plaintiff "must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the [P]laintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–91 (1989)).

Defendants argue that Plaintiff's official capacity claims fail because there is no evidence that a policy, custom, or practice caused the alleged constitutional violations. (*See* Def.'s MSJ 15:14–22). Defendants are correct. Here, Plaintiff's allegations stem purely from the individual actions of the defendant officers, and there is no evidence in the record demonstrating that Defendants were acting pursuant to a policy of deliberate indifference to

constitutional rights. Accordingly, the Court grants summary judgment on Plaintiff's official capacity claims.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgement, (ECF No. 31), is **GRANTED in part and DENIED in part** consistent with the foregoing.

**IT IS FURTHER ORDERED** that the parties shall have thirty (30) days from the issuance of this Order to file a Joint Pretrial Order.

**DATED** this  21  day of August, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge